**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aerisa Inc., a Delaware corporation,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>  )<br>Plasma-Air International, a Connecticut )<br>corporation; Terry A. Busskohl; Clifford )<br>Miller; Lawrence Sunshine; John  )<br>Collins,  )<br>  )<br>Defendants.  )<br>  ) | No. CV 08-227-PHX-NVW<br><br>**FINDINGS OF FACT AND**<br>**CONCLUSIONS OF LAW**<br><br>**AND**<br><br>**PRELIMINARY INJUNCTION** |

Plaintiff Aerisa Inc. ("Aerisa") has filed a Motion for a Preliminary Injunction (doc. # 17) seeking to enjoin Defendant Plasma-Air International ("Plasma-Air") and its officers from certain advertising practices that Aerisa alleges to be misleading. To obtain preliminary injunctive relief, a plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008). "[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). Following are

the court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a)(2). For reasons given below, Plaintiff's motion will be granted.

## I. Findings of Fact

Aerisa is a designer and manufacturer of air cleaning systems.[1] In August 2006, a contract was concluded between Alf Mauritzon, Eco-Air Technologies LLC, Ion Investment Partners LLC, Clifford Miller, and Miller's company Viper Holdings LLC. This agreement (the "Wind-Up Agreement") provided for an irrevocable transfer of rights in Bentax air cleaning technology to Aerisa.

Defendants Terry A. Busskohl and Clifford Miller are corporate officers of Plasma-Air International. Under their direction, Plasma-Air has begun selling products that are practically identical to the products sold by Aerisa. It has maintained a web site that advertises these products under Plasma-Air's name. The site contains statements that Plasma-Air is the "worldwide successor to the Bentax Technology." It includes testimonials and test reports relating to products manufactured by Aerisa. The testimonials explicitly mention Bentax technology, and they are presented in a way that suggests they refer to Plasma-Air's products. The test reports on the website have been altered so that they refer to Plasma-Air's products rather than Aerisa's.

Together and individually, these website representations are likely to mislead a consumer regarding the origin of the goods sold by Plasma-Air. They suggest that Plasma-Air (rather than Aerisa) has trademark rights to the Bentax Technology. Aerisa has made a persuasive showing that this is not true.

## II. Conclusions of Law

Section 43(a) of the Lanham Act imposes liability for a materially false statement of fact about a product in a commercial advertisement that deceives or has a tendency to deceive a substantial segment of its audience and harms or is likely to cause harm to the

---

[1] For convenience, the term "Aerisa" will be used in this Order to refer both to Aerisa and Aerisa's predecessor in interest, Ionz International, Inc.

- 2 -

1  plaintiff.  15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,
2  1139 (9th Cir. 1997).  Where the statement is literally false, actual deception of
3  consumers is presumed.  *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 977 (2d
4  Cir. 1988).

5        Aerisa has succeeded in showing a likelihood of irreparable harm and probable
6  success on the merits under the Lanham Act.  Through Plasma-Air's website, Plasma-Air,
7  Busskohl and Miller have made false statements about the natures and origins of their
8  products.  They have claimed ownership of intellectual property rights in Bentax
9  Technology that were irrevocably transferred to Aerisa via the Wind-Up Agreement.
10 They have altered test reports so that the reports suggest that the products in question are
11 not Aerisa's, but Plasma-Air's.  Finally, they have published testimonials regarding the
12 efficacy of Bentax Technology.  As previously explained, Plasma-Air does not possess
13 any trademark rights in this technology.

14       Plasma-Air claims that this is not the case because the "only vehicle for the
15 relinquishment of Miller's rights to the [Bentax] Technology" was a non-compete clause
16 contained in the Wind-Up Agreement.  According to Plasma-Air, this clause was
17 rendered ineffective by its own terms when Aerisa failed to meet certain funding
18 requirements.  This argument lacks merit.  A separate provision of the Wind-Up
19 Agreement provides for the irrevocable assignment of "all licenses to use and exploit . . .
20 the [Bentax] Technology" to Aerisa.  The effectiveness of the separate non-compete
21 clause has no bearing on Aerisa's ownership of the rights in question.  Plasma-Air,
22 Miller, and Busskohl may or may not be free to compete with Aerisa.  Freedom to
23 compete does not carry with it the privilege of infringing others' intellectual property.

24       It is clear that Plasma-Air's continued use of the testimonials, test reports, and
25 ownership claims regarding Bentax Technology will likely result in irreparable harm to
26 Aerisa.  The false statements are presumed to create a false association between Plasma-
27 Air's products and Aerisa's in the marketplace.  To the extent that both companies claim
28 exclusive trademark rights to the same technology, the conflict between those claims casts

1  doubt on Aerisa's operations in the eyes of consumers.  Finally, it is likely that Plasma-
2  Air will wrongfully divert customers from Aerisa if these advertising activities are not
3  enjoined.

4       For these same reasons, the balance of hardships does not weigh against granting a
5  preliminary injunction in this case.  Plasma-Air has not submitted any proof of likely
6  harm to it from the cessation of the challenged advertisements.  Therefore, no bond shall
7  be required before an injunction shall issue.  *See Doctor's Assocs., Inc. v. Distajo*, 107
8  F.3d 126, 136 (2d Cir. 1997).

9       IT IS THEREFORE ORDERED that Aerisa's Motion for a Preliminary Injunction
10 (doc. # 17) is granted.  Defendant Plasma-Air International, Terry A. Busskohl, and
11 Clifford Miller, their officers, directors, agents, servants, attorneys, employees, privies,
12 successors, licensees and assigns, and all persons holding for or through them, or acting
13 in concert with them, are hereby preliminarily enjoined from:

14      (a)  Removing Aerisa's name (or the name of any of Aerisa's predecessors in
15 interest) from test reports for Aerisa's products and inserting the name "Plasma-Air"
16 thereby falsely representing that the test reports are for Plasma-Air's products;

17      (b)  Using testimonials on Plasma-Air's website (or elsewhere) that are actually
18 for Aerisa's products and falsely representing that they are for Plasma-Air's products; and

19      (c)  Stating or implying on Plasma-Air's website (or anywhere else) that Plasma-
20 Air is the "worldwide successor to the Bentax Technology."

21      IT IS FURTHER ORDERED that no bond is required for this Preliminary
22 Injunction.

23      DATED this 11th day of December, 2008.

24
25
26                                       /s/ Neil V. Wake
27                                          Neil V. Wake
                                         United States District Judge
28